CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
February 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **GWENDOLYN JUNELLA CASEY,** | |
| Plaintiff, | Case No. 1:24CV00001 |
| v. | **OPINION AND ORDER** |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** | JUDGE JAMES P. JONES |
| Defendant. | |

*John Osborne Goss,* GOSS & FENTRESS, *PLC, Norfolk, Virginia, for Plaintiff; George G. Davidson, Special Assistant U.S. Attorney,* SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, *Baltimore, Maryland, for Defendant.*

In this Social Security disability insurance case, I will accept the Report and Recommendation (Report) of the magistrate judge.

The plaintiff, Gwendolyn Junella Casey, challenges the final decision of the Social Security Commissioner (Commissioner) denying disability insurance benefits under the Social Security Act (Act). The action was referred to United States Magistrate Judge Pamela Meade Sargent to conduct appropriate proceedings. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Magistrate Judge Sargent filed her Report on December 20, 2024, in which she recommended that the court affirm the Commissioner's decision denying benefits. Report 24, ECF No. 16. On December

27, 2024, Casey filed a timely Objection to the Report. The Commissioner has filed a Response to the Objection and accordingly the Objection is ripe for decision.

I.

Casey applied for disability insurance benefits (DIB) and supplemental security income (SSI) on May 19, 2021. R. 238, ECF No. 6. In her current applications for DIB and SSI, Casey alleges disability as of September 24, 2016. When these claims were denied initially and upon reconsideration, she requested a hearing before an ALJ, at which she was represented by counsel. *Id.* at 140–41.

The ALJ denied her claims by written decision dated June 1, 2023. *Id.* at 30. He found that she has met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2021; has not engaged in substantial gainful activity since her alleged date of disability; has severe impairments[1]; and cannot perform any of her past relevant work. However, he determined that she has a sedentary residual functional capacity and could perform a range of light work and thus was not under a disability as defined by the Act.

In making his determination of Casey's residual functional capacity, the ALJ deviated from the opinions of two state agency consultants, Nicolas Tulou, M.D.,

---

[1] The ALJ found that the plaintiff had the following severe impairments: "diabetes mellitus with polyneuropathy, status post right great and second toe amputation; lumbar degenerative disc disease; and obesity." *Id.* at 27.

2

and William Humphries, Jr., M.D. The two doctors opined that Casey had a light residual functional capacity. The ALJ found those opinions to be inconsistent with the record. He explained after his own review of the record that Casey was more limited in the work she could perform. Casey "was diagnosed with and treated for degeneration of the spine with associated pain, neuropathy, and had two toe amputations." *Id.* at 28. She therefore has the residual functional capacity to perform sedentary work and occasionally perform a few additional movements.

II.

The court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b). When reviewing the decision of an Administrative Law Judge (ALJ) under the Social Security Act, the court must ask whether there is substantial evidence supporting the ALJ's factual findings and whether the ALJ applied the correct legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (superseded by statute on other grounds as stated in *Stroup v. Apfel*, 205 F.3d 1334 (4th Cir. 2000) (unpublished)). Substantial evidence is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Although "the threshold for such evidentiary sufficiency is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), the court may not "reflexively rubber-stamp an ALJ's findings." *Arakas v. Comm'r*, 983 F.3d 83,

3

95 (4th Cir. 2020) (citation omitted). "To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Id.* (internal quotation marks and citations omitted).

If such evidence exists, then the inquiry ends, and the Commissioner's final decision must be affirmed. *Laws*, 368 F.2d at 642. Alternatively, if substantial evidence to support the Commissioner's decision is not found or the decision was not reached through application of the correct legal standard, I must vacate the decision. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

III.

Casey presents multiple arguments to the Report, which fail. The ALJ applied the correct legal standard and supported all of the relevant factual findings with substantial evidence.

Casey's overarching objection concerns the Report's finding that the ALJ supported his decision with substantial evidence. She makes multiple arguments about the ALJ's analytical process. She also argues that the ALJ should have required a consultative examination to provide detail into the effect of Casey's amputations on her ability to work. Pl.'s Objs. R. & R. 3, ECF No. 17. These are arguments that she raised with Magistrate Judge Sargent. Report 19, ECF No. 16.

First, Casey argues that the ALJ "made up" the residual functional capacity determination as part of an "impermissible lay interpretation" of Casey's record.

4

Pl.'s Objs. R. & R. 3, ECF No. 17. He "rejected all of the medical opinions of record," and "sought out no assistance to guide the RFC formulation process" even "despite Plaintiff having significant toe amputation surgery." *Id.* at 2. As an initial matter, the ALJ did supplement his analysis by considering the opinions of the state agency consultants, Drs. Tulou and Humphries. True, they issued their opinions before Casey underwent the amputations. But the ALJ did consider Casey's amputations, both in his review of Casey's medical record and also in his analysis of her residual functional capacity. R. 25–28, ECF No. 6. Importantly, however, ALJs are not required to formulate their residual functional capacity determinations with guidance from medical professionals. 20 C.F.R. §§ 404.1546(c), 416.946(c).

Second, Casey's argument on the lack of a consultative examination fails. ALJs are only required to order consultative examinations in certain circumstances that Casey's record does not indicate. These circumstances include when it is necessary "to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). A consultative examination would also be appropriate if "[t]here is an indication of a change in [a claimant's] condition that is likely to affect [her] ability to work, but the current severity of [her] impairment is not established." *Id.* at § 404.1519a(b)(4). As the magistrate judge concluded, the evidence before the ALJ was sufficient for him to conclude that the current severity of her impairment

5

was established by the record. Report 23, ECF No. 16. The ALJ referenced exhibits of Casey's medical records into 2023, the year after her amputations. R. 26, ECF No. 6. In February 2023, Casey reported during a visit to a nurse practitioner that she had been healing well following an amputation. *Id.* at 1272. I find that there is substantial evidence supporting the ALJ's conclusion that there was sufficient evidence to make a determination on Casey's residual functional capacity without a consultative examination.

Casey relatedly contends that the ALJ "conceded that there was a lack of guidance from the record to determine whether her symptoms [related to the amputations] had been alleviated through treatment." Pl.'s Objs. R. & R. 2, ECF No. 17. The quote that Casey seems to be referring to actually says, "there's no evidence of post-operative complications or evidence that [the amputations] did not alleviate her symptoms." R. 26, ECF No. 6. Concluding that post-operative complications were not borne out by the record is not the same thing as "conceding" that the existence of post-operative complications was actually an open question. Again, the ALJ referenced exhibits that included a treatment note from a nurse practitioner who saw Casey following her amputation. Casey reported that her toe had healed well. *Id.* at 1272.

Casey makes two more arguments to support her contention that the ALJ erred in finding that she was not disabled despite the amputations. First, she argues that

6

the ALJ did not create the necessary logical bridge when he noted that, despite Casey having two amputations, medical exams showed "some normal findings." *Id.* at 28. The argument is that "two amputations is far from a normal finding in the record." Pl.'s Objs. R. & R. 2, ECF No. 17. But the ALJ's comment on "normal findings" was not in reference to amputation itself being normal. The normal findings were that, despite the amputations and her other medical ailments, Casey had normal tone, sensation, and strength. R. 28, ECF No. 6. The ALJ's observation therefore does not support Casey's contention that he dismissed her amputations as merely normal.

Casey further contends that Magistrate Judge Sargent rubber-stamped the ALJ's findings. Instead of explaining how Casey's health issues affected her ability to work, she argues, the ALJ merely summarized the evidence. Pl.'s Objs. R. & R. 3, ECF No. 17. I disagree. The ALJ did summarize Casey's medical history during the relevant time period. R. 24–26, ECF No. 6. But then he considered each medical opinion for supportability and consistency, and he explained why Casey's residual functional capacity is even more limited than what the state agency consultants determined. *Id.* at 26–27, 28. He provided further analysis in discussing the severity of Casey's impairments, as well. *Id.* at 20–23.

After reviewing the ALJ's analysis of Casey's residual functional capacity, I find that substantial evidence supports his determination. He considered the evidence in the record and ultimately concluded that Casey's residual functional

7

capacity is more limited than that of the state agency consultants' opinions. The ALJ's decision met the standard that "a reasoning mind would accept as sufficient." *Laws*, 368 F.2d at 642.

Accordingly, it is **ORDERED** as follows:

1. The plaintiff's objections, ECF No. 17, are DENIED;

2. The magistrate judge's Report and Recommendation, ECF No. 16, is fully ACCEPTED;

3. The Commissioner's final decision is AFFIRMED;

4. A separate final judgment will be entered herewith.

    ENTER:   February 14, 2025

    /s/  JAMES P. JONES
    Senior United States District Judge